## EPSTEIN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 2, 1921.)

No. 127.

**1. Indictment and information ⊜⟹125 (1)—"Duplicity" defined.**

"Duplicity" in an indictment consists in the joinder of two or more distinct offenses in one count.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Duplicity.]

**2. Criminal law ⊜⟹901—Motion for directed verdict waived by introduction of evidence.**

Error in overruling a motion to dismiss or direct a verdict at the close of the government's case is waived by introduction of evidence by defendant.

**3. Perjury ⊜⟹36—Corrupt intent question for jury.**

While it is essential to the offense of perjury that the false statement made must have been with corrupt intent, that question is one solely for the jury.

**4. Perjury ⊜⟹11 (2)—False testimony held material.**

False testimony given by the president of a bankrupt corporation on his examination, under Bankruptcy Act, § 21a (Comp. St. § 9605a), that he used certain money of the corporation in payment of creditors, *held* material in a prosecution for perjury.

In Error to the District Court of the United States for the Eastern District of New York.

Criminal prosecution by the United States against Samuel Epstein. Judgment of conviction, and defendant brings error. Reversed as to one count, and affirmed as to one count.

Epstein was the president and in control of the affairs of the Locust Building Company, Incorporated, and subsequently of the Beta Building Company, both of which concerns were engaged in obtaining land, building thereon, and disposing of the buildings, if they could, in the borough of Queens. The Locust Company went into bankruptcy, and Epstein as its president was summoned, or appeared, to testify in respect of the "acts, conduct, and property" of the bankrupt before a special commissioner of the District Court for the Eastern District, pursuant to section 21a of the Bankruptcy Act (Comp. St. § 9605a). His testimony before such commissioner resulted in an indictment for perjury (United States Criminal Code, § 125 [Comp. St. § 10295]), wherein he was charged as follows:

In count 1, that he had willfully, etc., deposed before said commissioner that the Locust Company was forced to permit the foreclosure of a certain mortgage on property owned by it, because said Locust Company could not use any of the money received from the raising of certain mortgages, viz. $17,500, because the mortgagee did not pay to Epstein any money, but said mortgagee itself paid certain bills with said money.

In count 2, that he in like manner deposed on a subsequent day of hearing that Locust Company had sold to Beta Company certain property belonging to the former, and that said Beta Company had paid to Locust Company, as part of the consideration for such sale, $10,000 in cash.

No complaint is made of the formal parts of the indictment, which in due form charged the matters required by the statute above rererred to. After a protracted trial the jury returned Epstein guilty as charged, whereupon he took this writ.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Austin & McKown, of New York City (Thomas D. Austin, of New York City, of counsel), for plaintiff in error.

Leroy W. Ross, U. S. Atty., of Brooklyn, N. Y. (Charles J. Buchner, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] It is earnestly argued that this indictment is duplicitous. The word is misused. Duplicity in an indictment consists in the joinder of two or more distinct offenses in one count (Bishop, New Crim. Proc. vol. 1, § 432); and since the two perjuries here alleged are plainly describable as "two or more acts or transactions connected together," the joinder of counts is explicitly permitted by Revised Statutes, § 1024 (Comp. St. § 1690).

[2] It is with equal vigor said that it was error to deny defendant's motion to dismiss or direct at the close of the government's case. What the trial court did was to "reserve decision" on the motion. Whatever this may have been thought to mean, it was in effect a denial of the motion; but the exception is not available, because the defendant proceeded, adduced evidence, and so went into the whole case.

It is elementary that any defendant or accused who desires to rest upon his motion to dismiss or direct at the close of the plaintiff's case or that of the prosecution must himself rest; otherwise he must renew his motion at the close of all the evidence. The motion was renewed in this instance, but by the time all the evidence was in it is sufficient to say that there was a case for the jury.

[3] By common law, as well as by the words of the statute, perjury is committed (so far as it is here necessary to define it) by stating "any material matter which [the accused] does not believe to be true." It is in like manner fundamental that the false statement be made with a corrupt intent; but this question is one solely for the jury. United States v. Smith, 1 Sawy. 277, Fed. Cas. No. 16341. When the evidence was all in, Epstein had admitted that he made the statement which is the subject-matter of the first count. The verdict establishes that he made it corruptly; but it remained for the prosecution to show that the statement, however made, was material.

"Materiality" is a word to be measured by surrounding circumstances. The object of the examination wherein Epstein committed this falsity was to procure information in respect of the "acts, conduct, and property" of the Locust Building Company, Incorporated, a bankrupt. It was therefore material to know what that company had done, what it had, and what had become of its belongings. We are wholly unable to perceive how or why Epstein's reason for permitting the foreclosure of a mortgage (so far as we know of unquestioned validity) was or could be a "material matter" upon this inquiry. Therefore we are of opinion that the prosecution failed to prove the first count of the indictment.

In like manner the untruthfulness of the statement set forth in the second count in the indictment was admitted after it had been fully proven. Without going into the details of evidence we may admit (as claimed by plaintiff in error) that the evidence amounted to this: That Locust Company agreed to exchange a piece of its realty for certain other lots of land owned by Wagner Bros., but that the latter, instead of conveying as agreed to Locust Company, conveyed to Beta Company; but Beta Company, through Epstein as the president of both Beta and Locust, provided $10,000 for the use of Locust Company, as to which $10,000 Epstein testified, "I paid the creditors with it." Whether he did anything of the kind was the ultimate issue litigated before the jury in this case, and the verdict is against Epstein.

[4] We are of opinion that the statement charged in the second count was most material to the matter to be investigated under Bankruptcy Act, § 21a. The false answer was calculated to delude and injure the creditors of Locust Company, and the explanation or excuse, viz. that in substance and effect the creditors of Locust Company got the $10,000, did not, if true, mend the matter, except as it might show to the jury absence of corrupt intent. If false, the attempted excuse was an aggravation of the original falsity.

As to the second count we think there was enough to go to the jury.

Some exceptions were taken to the charge of the court, but the charge must be considered as a whole, and upon the whole it was more favorable to the plaintiff in error than he had any right to expect, inasmuch as the trial judge (as we read the charge) left the jury with the impression that, if the bankruptcy as a whole was an honest one, they ought not to convict Epstein.

Judgment on the second count is affirmed.